### UNITED STATES v. ADAMO et al.
### No. 2602.

Circuit Court of Appeals, First Circuit.

Dec. 17, 1931.

Haven Parker, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Robert H. Holt, of Boston, Mass. (Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., on the brief; David R. Pokross, of Boston, Mass., of counsel), for appellee Massachusetts Bonding & Ins. Co.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from the judgment of the District Court of Massachusetts in an action of contract brought by the United States on a bond in its favor, executed by Martin E. Adamo as principal, and the Massachusetts Bonding & Insurance Company as surety, for the faithful performance by Adamo of his duties as clerk in charge of postal contract station No. 42 in the Boston post office. At the close of the plaintiff's evidence the court directed a verdict for the defendants. Judgment was entered on the verdict, and the United States appealed.

The error assigned is that the court erred in directing a verdict for Adamo and the insurance company on the ground that none of the funds of the postal contract station No. 42 came into the hands and possession of the defendant Adamo.

The plaintiff's evidence tended to show that the post office contract station No. 42 was located in a drug store at 722 Huntington avenue, Boston, Mass., belonging to the Chester E. Sawyer Company, which operated several stores; that Adamo was treasurer of the Chester E. Sawyer Company and supervisor of its store managers; that he accepted an appointment as clerk in charge of contract station No. 42 by executing the bond in question and taking the official oath on August 24, 1923; that he took no active part in the conduct of the postal business at this station; that none of the funds of the station came into his hands; that Leland H. Crosby was employed by the Chester E. Sawyer Company as manager of this drug store, and was appointed clerk at contract station No. 42, and qualified by taking the official oath at the same time that Adamo was appointed clerk in charge; that Crosby was in the active charge of the station; that he received all the moneys of that station and transmitted the same, with the exception of the sums here involved, to the proper postal officials; and that the accounts of the station were made up by Crosby, who signed Adamo's name to the reports.

It further appeared that a post office inspector, on or about May 26, 1925, examined the accounts and property at station No. 42, in the presence of Adamo, and found a shortage of $1,708.49 in the money order accounts, and $164.67 in the stamp account; that the missing funds had been embezzled by Crosby, who has since been convicted and sen-

tenced therefor; that written demands were made by the United States on Adamo and the Massachusetts Bonding & Insurance Company for the payment of the amount of the shortage; that no payments were made by Crosby; and that the defendants, Adamo, and the insurance company, denied liability therefor and refused to pay.

The material provisions of the bond sued upon read as follows: "If the said employee shall * * * faithfully discharge all the duties and trusts imposed upon him * * * either by law or by the rules or regulations of the Post Office Department, * * * and shall faithfully account for, deliver, and pay over to the proper officials or person, all moneys, mail matter, and other property of every kind which shall come into his hands by virtue of his occupancy of any position or positions in the said post office, * * * then this obligation shall be void; otherwise, of force."

In its declaration, after setting out that Adamo was appointed clerk in charge of contract station No. 42 and that, on August 27, 1923, he and the Massachusetts Bonding & Insurance Company jointly and severally executed a bond to the United States for $1,000 for the faithful discharge of Adamo's duties as clerk in charge and the proper accounting by him "of the money, mail matter and other property of every kind which came into his hands by virtue of his occupancy of any position or positions in said postoffice," it was alleged "that there has been a breach of the condition of said bond in that the said defendant Martin E. Adamo named in said bond did and has not faithfully discharged his duties as such clerk in charge and did not make a proper acounting of the moneys, mail matter and other property of every kind which came into his hands or the hands of his agent by virtue of his position as clerk in charge at the said contract station No. 42 as in said bond set forth, but the said Martin E. Adamo or his agent received as such clerk in charge and converted to his own use divers large sums of money of the plaintiff, to wit, $1,707.72 for money orders sold and unaccounted for, and $164.67 from the fixed credit allowed the said clerk in charge by the United States, making the amount due the plaintiff $1,872.39."

It will be noted that the particular breach of the condition of the bond set out in the declaration and relied on in the evidence is the alleged failure of the defendant Adamo to account for and turn over $1,707.72 derived from the sale of money orders, and a short-

age of $164.67 in the stamp account as to which there was a fixed credit allowed; and that, while it is alleged or claimed that the funds received from the sale of money orders and stamps or stamped paper came into the hands of defendant Adamo, there is no evidence which sustains such claim. In fact, all the evidence is directly to the effect that the active management of station No. 42 and the receipt and handling of all the funds of that station was by Crosby, a clerk of the Post Office Department qualified as a public official by taking the oath of office. It is not contended by the plaintiff, either in its argument or brief, that there is any substantial evidence from which it could be found that any of the funds of station No. 42 came into the hands of Adamo or of any agent of his; and we are of the opinion that the District Court did not err in directing the jury to find a verdict for the defendants, unless, as a matter of law, Adamo as clerk in charge, under some statute or regulation, is made responsible for the defalcation of Crosby, a subordinate official and clerk.

It is the contention of counsel for the government that, although none of the funds of the station in fact came into the hands of Adamo, he and his surety on the bond are responsible thereunder because of the defalcation of Crosby. In support of this contention, reliance is placed on the decision in Bryan v. United States (C. C. A.) 90 F. 473, 53 L. R. A. 218. There the funds not accounted for by the postmaster at San Francisco consisted of money embezzled by a money order clerk in that post office, and the Circuit Court of Appeals for the Ninth Circuit held that the postmaster and his surety were liable therefor on a bond conditioned for the payment of all money that shall "come into his hands from postage collected * * * or money orders issued by him," and would "faithfully do and perform all of the duties and obligations imposed upon or required of him by law or the rules and regulations of the department in connection with the money-order business." But we do not think that case applies to the situation now before us. There it was admitted that the funds in question were received at the post office in San Francisco, while the principal was postmaster and during the term of the bond. And the basis of the decision was that "the postmaster at a money-order post office is the official custodian of all money received on account of money orders issued therefrom, and as such custodian it is his duty to account to the government for the same;" and that "in view of this fact, section 3834 of the

Revised Statutes requires that the bond of the postmaster at a money-order post office 'shall contain an additional condition for the faithful performance of all duties and obligations in connection with the money-order business' "; and that, under these circumstances, the words of the bond "come into his hands" meant "come into his official custody." That is quite a different case from the one before us, for Adamo is not the postmaster of the Boston post office and his bond did not contain the additional condition that Postmaster Bryan's bond did, so that the words "come into his hands" cannot be construed as meaning anything more than they fairly import.

Since the decision in the Bryan Case was rendered, the above-quoted provision from section 3834 has been struck out (March 1, 1909, c. 232, 35 Stat. 670 [39 USCA § 34]); but there is a provision in Revised Statutes, § 4029 (39 USCA § 713) which reads: "The postmaster of every city where branch post offices or stations are established and in operation, subject to his supervision, is authorized, under the direction of the Postmaster General, to issue, or to cause to be issued, by any of his assistants or clerks in charge of branch post offices or stations, postal money orders, payable at his own or at any other money-order office, or at any branch post office or station of his own, or of any other money-order office, as the remitters thereof may direct; and the postmaster and his sureties shall, in every case, be held accountable upon his official bond for all moneys received by him or his designated assistants or clerks in charge of stations, from the issue of money orders, and for all moneys which may come into his or their hands, or be placed in his or their custody by reason of the transaction by them of money-order business."

This statute unquestionably makes the postmaster of a city post office and his surety liable under their bond for the defalcation of money order funds by his assistants or clerks in charge of a branch post office, even though the funds embezzled never, in fact, came into the hands of the postmaster. But Adamo was not the postmaster of the Boston post office, and we know of no statute or regulation imposing such liability on a clerk such as he was, if the funds never came into his hands, but into the hands of another clerk and official in the same department who embezzled them.

We are aware there are many cases where public officials, into whose hands public funds have come, charged with the duty of safely keeping, accounting therefor, and paying over the same, have been held responsible for embezzlement by a subordinate official, but we know of no case in which, in the absence of statute, such an official has been held liable on his bond to account for public funds which never came into his hands or possession, but into the hands of another official who embezzled them. See United States v. Prescott, 3 How. 578, 11 L. Ed. 734; United States v. Thomas, 15 Wall. 337, 21 L. Ed. 89; Smythe v. United States, 188 U. S. 156, 170, 23 S. Ct. 279, 47 L. Ed. 425.

The judgment of the District Court is affirmed.